1   Jason Hain (State Bar No. 295721)
    LAW OFFICES OF JASON HAIN
2   30 Cumberland Street
    San Francisco, California 94110
3   Telephone:  831-227-6892
    Facsimile: 415-795-9692
4
5   *Attorney for RELATOR*
    WILLIAM ARTEMUS
6
7                    UNITED STATES DISTRICT COURT
8                   NORTHERN DISTRICT OF CALIFORNIA
9
    UNITED STATES ex rel. WILLIAM ARTEMUS        Case No.
10
          RELATOR,                                COMPLAINT FOR:
11
    vs.                                           1.  Violation of 31 U.S.C. § 3729 et seq.
12                                                 2.  Violation of Civil Code § 1942.5
    JIM YAN LOUIE, CHRISTINE NIAN LOUIE and       3.  Violation of San Francisco Administrative
13  DOES 1 through 50, inclusive,                     Code § 37.10B
14        Defendants.                             **FILED UNDER SEAL**
15
16                                                **JURY TRIAL DEMANDED**
17
18  COMES NOW, WILLIAM ARTEMUS ("RELATOR"), who states the following in his complaint
    against Defendants JIM YAN LOUIE, CHRISTINE NIAN LOUIE:
19                        **JURISDICTION AND VENUE**
20  1.     This action arises under the laws of the United States to redress violations of the Federal False
21  Claims Act, 31 U.S.C. §3729 *et seq.* ("FCA").
22  2.     Subject-matter jurisdiction is conferred by 31 U.S.C. §3732(a) and 28 U.S.C. §1331.
23  3.     The Court has personal jurisdiction over all of the Defendants because they are all located within
24  the Northern District of California and act as providers of property management services and
25  housing within the Northern District of California. Each Defendant regularly performs duties of
26  property managers or landlords, and accordingly, is subject to the jurisdiction of this Court.
27  4.     The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Defendants' claims
28  for Violation of Civil Code § 1942.5 and Violation of San Francisco Administrative Code § 37.10B

COMPLAINT FOR VIOLATION OF 31 U.S.C. § 3729 AND JURY DEMAND
Page 1 of 12

because Defendants' California Law and San Francisco Law violations and their violations of the Federal False Claims Act arise from the same transactions or occurrences. The Court also has pendant jurisdiction over Defendants' California Law violations because these violations and Defendants' violations of the Federal False Claims Act arise out of a common nucleus of operative fact.

5.      Venue lies under 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a) because Defendants contract business within this district, the facts forming the basis of this complaint occurred within this district and the property which is the subject of this action is situated within this district.

6.      The facts and circumstances of the Defendants' violations of the Federal False Claims Act have not been publicly disclosed in a criminal, civil, or administrative hearing, nor in any congressional, administrative, or General Accounting Office or Auditor General's report, hearing, audit, or investigation, or in the news media.

7.      RELATOR is the original source of the information upon which this Complaint is based, as that phrase is used in the Federal False Claims Act, and she provided disclosures of the allegations of this Complaint to the United States prior to filing.

8.      Immediately upon filing the Complaint, RELATOR will provide the United States Attorney General with a copy of this Complaint and written disclosure of substantially all material evidence and information RELATOR possesses.

## PARTIES

9.      Qui Tam Relator WILLIAM ARTEMUS brings this action on his own behalf and on behalf of the United States of America to recover civil damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*. Relator, a recipient of Section 8 housing subsidy, rented a an in-law unit located at 210 Teddy Avenue, San Francisco, California (hereinafter the "Subject Premises") from June 16, 2009 through the present. At some time before Relator's tenancy, it is believed that Defendant or a prior owner had partitioned the basement of the unit above and constructed a separate residential unit, the Subject Premises. At all times relevant to this Complaint, RELATOR was a Section 8 voucher recipient; thus, RELATOR's tenancy was subsidized by the Federal Government and subject to Department of

1   Housing and Urban Development regulations and all applicable Federal law.

2   10.    RELATOR is informed and believes, and thereon alleges, that Defendants JIM YAN LOUIE,

3   CHRISTINE NIAN LOUIE were the owners of the Subject Property at all times relevant to this action to

4   the date of filing of this Complaint.

5   11.    RELATOR is informed and believes, and thereon alleges, that Defendants, DOES 1-50 at all

6   times relevant to this action, were responsible for management, maintenance and care of the Subject

7   Property and Subject Premises, each was thus a "landlord" under the San Francisco Rent Stabilization

8   and Arbitration Ordinance (hereinafter "Rent Ordinance") and was responsible in some manner for the

9   occurrences herein alleged, and that RELATOR's damages as herein alleged were proximately caused by

10  them.

11  12.    When the term "Defendant" is used herein, it shall refer to Defendant JIM YAN LOUIE.  When

12  the term "Defendants" is used herein, it shall refer to Defendant JIM YAN LOUIE, CHRISTINE NIAN

13  LOUIE and the DOE Defendants.

14  13.    RELATOR communicated on a routine basis with Defendant JIM YAN LOUIE and his agents

15  concerning RELATOR's tenancy at the Subject Premises.

16  14.    The true names and capacities of Defendants sued herein as DOES 1 through 50, inclusive,

17  whether individual, corporate, associate, or otherwise, are unknown to RELATOR who therefore sues

18  such Defendants by such fictitious names.  When their true names and capacities are ascertained,

19  RELATOR will amend this Complaint by asserting their true names and capacities herein. RELATOR is

20  informed and believes, and thereon alleges, that each of the fictitiously named Defendants are

21  responsible in some manner for the occurrences herein alleged, and that RELATOR's and the

22  Government's damages as herein alleged were proximately caused by those Defendants.

23  15.    RELATOR is informed and believes, and thereon alleges, that in doing the things herein alleged,

24  the Defendants, and each of them, including without limitation the DOE Defendants, were acting as the

25  agents, employees and/or principals of their co-defendants, and were generally acting within the course

26  and scope of their agency and employment.

27  16.    RELATOR is informed and believes, and thereon alleges, that at all times relevant herein, each

28

COMPLAINT FOR VIOLATION OF 31 U.S.C. § 3729, OTHER CAUSES AND JURY DEMAND
Page 3 of 12

employer of employees had advanced knowledge of the unfitness of the employee and employed them with conscious disregard of the rights or RELATOR and others and authorized and/or ratified the wrongful conduct and/or was personally guilty of oppression, fraud, or malice.

## OPERATIVE FACTS

17.     The Subject Premises was subject to the rent limitations, anti-harassment provisions and eviction controls of the San Francisco Rent Stabilization and Arbitration Ordinance ("Rent Ordinance").

18.     RELATOR continually occupied the Subject Premises from his initial occupancy on or around June 16, 2009 through the date of the filing of this Complaint.  At all times relevant to this Complaint, RELATOR was the sole occupant of the Subject Premises.

19.     Before the subsidies would be approved by the San Francisco Housing Authority Defendant JIM YAN LOUIE was require to enter into a lease agreement with Relator.  On June 8, 2009, the parties executed a lease agreement (hereinafter "Lease") for the rental of the Subject Premises. **Exhibit A - Lease**.  The Lease states "owner provides all utilities."  The Lease makes no mention of any charges to Relator for utilities or any other side payments for any other services provided to Relator in connection with his occupancy of the Subject Premises.

20.     RELATOR had resided in the Subject Premises in excess of one year as a tenant pursuant to a written rental Agreement (the "Agreement") with Defendant JIM YAN LOUIE.

21.     Before the subsidies would be approved by the San Francisco Housing Authority, Defendant JIM YAN LOUIE was required to enter into an agreement with Relator entitled "Housing Assistance Payment Contract (hereinafter "HAP Contract").  Defendant JIM YAN LOUIE and Relator executed the HAP Contract on June 15, 2009.  The HAP Contact was attached to the Agreement and provided additional obligations that Defendant JIM YAN LOUIE would have to RELATOR and the Housing Authority which Defendant JIM YAN LOUIE agreed to meet as conditions to remaining eligible for the housing assistance payments.  One such condition provided that Defendants would not charge or accept any payments from RELATOR other than those approved by the Housing Authority.  A true and correct copy of the HAP Contract is attached hereto as **Exhibit B.**

22.     The HAP Contract provided that rent would be $2,434 per month.  Pursuant to page 2 of the HAP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Contract, Defendant JIM YAN LOUIE agreed to pay for all utility and garbage service to the Subject Premises. "Part A" of the HAP Contract provided that there were no other agreements arising from RELATOR's occupancy of the Subject Premises aside from "OWNER PAYS ALL UTILITIES."

23.     However, since the beginning of RELATOR's tenancy, Defendant JIM YAN LOUIE demanded that RELATOR pay $269 in addition to the tenant's portion of the rent. RELATOR, an elderly veteran, assumed that this charge was intended to cover his utility usage and was not aware that Defendant JIM YAN LOUIE was required to provide utility service to RELATOR's unit at no extra cost and that the arrangement demanded by Defendant JIM YAN LOUIE was illegal and fraudulent. Thus, RELATOR paid Defendant JIM YAN LOUIE $269 in addition to RELATOR's rent every month of RELATOR's tenancy from June, 2009 through December, 2015.

24.     Because RELATOR's income fluctuated every year, the Housing Authority issued recertifications as amendments to the HAP Contract every year stating what RELATOR's legal rent contribution was. Thus, it was not possible that Defendants had forgotten that they were not allowed to charge RELATOR more than that amount approved by the Housing Authority. An amendment to the HAP Contract was issued by the Housing Authority on March 16, 2010, stating the tenant rent would be $454.00 as of June 1, 2010. An amendment to the HAP Contract was issued by the Housing Authority on April 1, 2011, stating the tenant rent would be $444.00 as of June 1, 2011. An amendment to the HAP Contract was issued by the Housing Authority on April 6, 2012, stating the tenant rent would be $460.00 as of June 1, 2012. An amendment to the HAP Contract was issued by the Housing Authority on March 28, 2013, stating the tenant rent would be $451.00 as of June 1, 2013. An amendment to the HAP Contract was issued by the Housing Authority on September 22, 2014, stating the tenant rent would be $518.00 as of November 1, 2014. An amendment to the HAP Contract was issued by the Housing Authority on October 15, 2014, stating the tenant rent would be $518.00 as of November 1, 2014. An amendment to the HAP Contract was issued by the Housing Authority on April 23, 2015, stating the tenant rent would be $495.00 as of June 1, 2015. RELATOR paid Defendant JIM YAN LOUIE approximately $269 in addition to these amounts prescribed by the Housing Authority every month of RELATOR's tenancy from June, 2009 through December, 2015.

25.    Although RELATOR had paid his portion of the rent for the months from July through September, 2015, Defendants did not receive the assistance payments for those months from the Housing Authority.  On September 28, 2015, Defendant JIM YAN LOUIE issued RELATOR a Three Day Notice to Pay or Quit claiming RELATOR owed Defendants an amount equal to the Housing Authority's assistance payments from July through September, 2015.

26.    Although RELATOR had paid his portion of the rent for the months from July through October, 2015, Defendants did not receive the assistance payments for those months from the Housing Authority. On October 10, 2015 Defendant issued a Ten Day Notice to Pay or Quit to RELATOR through, claiming RELATOR owed Defendants an amount equal to the Housing Authority's assistance payments from July through October, 2015.

27.    On December 8, 2015, RELATOR delivered his rental payment in the amount of $495 enclosed in a letter to Defendant JIM YAN LOUIE informing Defendant JIM YAN LOUIE that RELATOR had recently learned that the extra $269 charge was improper, rejecting Defendant JIM YAN LOUIE's explanations for the charge, demanding evidence to verify any explanation for the charge, demanding that the cable television bill by transferred to RELATOR's name in compliance with HUD regulations and refusing to pay the extra $269 charge until such credible evidence was produced to verify Defendant JIM YAN LOUIE's explanation.

28.    In retaliation for RELATOR ceasing payment of the $269 side payment, on January 5, 2016, Defendant JIM YAN LOUIE issued RELATOR a 90 Day Notice of Termination of Section 8 Lease on behalf of himself and Defendant CHRISTINE NIAN LOUIE.

29.    As a direct and proximate result of the above mentioned conduct,          RELATOR has suffered and continues to suffer damages, all in an amount to be proven.

30.    As a direct and proximate result of the above conduct, RELATOR has suffered and continues to suffer economic loss including attorney's fees.

31.    By way of RELATOR's long-term tenancy and regular monthly payment of rent, RELATOR was also a common law tenant of the Subject Premises.

32.    As a direct and proximate result of the above mentioned conduct, RELATOR has suffered

damages, all in an amount to be proven.

33.    As a direct and proximate result of the above acts by Defendants, and each of them, RELATOR paid excessive rent for the Subject Premises for over one year.

34.    By demanding and taking side payments from RELATOR, Defendants breached their Agreement with the Housing Authority and violated Department of Housing and Urban Development regulations and the Federal False Claims Act.

35.    Defendants engaged in the above-described conduct with the knowledge that the conduct was without right or justification and without regard for the fact that it would cause financial harm to RELATOR, notwithstanding their obligation to comply with applicable statutes, Department of Housing and Urban Development regulations, and Defendant's contract with the Housing Authority.  RELATOR is therefore entitled to punitive damages.

## APPLICABLE FASLE CLAIMS ACT LAW

36.    The Federal False Claims Act provides, in pertinent part:

(a)(1) Any person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; or (C) conspires to commit a violation of subparagraph (A), (B), is liable to the United States government for a civil penalty of not less than $5,500 nor more than $11,000, plus 3 times the amount of damages which the Government sustains as a result of the act of that person.

(b) For purposes of this section, (1) the terms "knowing" and "knowingly", (A) mean that a person, with respect to information, (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud.

37.    A landlord violates the Federal False Claims Act by demanding and receiving payments for housing services when such payments have not been approved by the Government. *Coleman v. Hernandez* 490 F.Supp.2d 278 (2007).

38.    Each time a payment was received in violation of the Federal False Claims Act is a separate

violation of the Federal False Claims Act. *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1157 (2d Cir.1993).

### COUNT I
**(Violation of 31 U.S.C. § 3729 et seq.)**

39.     RELATOR re-alleges and incorporates herein the allegations of all preceding paragraphs as though fully set forth by this reference.

40.     Defendants received Federal funds from the San Francisco Housing Authority as subsidies for RELATOR's rental payments pursuant to the Department of Housing and Urban Development's Section 8 Housing Voucher Program.

41.     Defendants endeavored to increase their profits from RELATOR's tenancy by charging side payments. Defendant did so, knowing that Defendant had promised RELATOR and the San Francisco Housing Authority that Defendant would pay for all of RELATOR's utility costs as a condition for Defendant being eligible to receive subsidy payments from the San Francisco Housing Authority.

42.     As a prerequisite for receiving funds through the Section 8 Housing Voucher Program, Defendant JIM YAN LOUIE was required to agree to pay for all of RELATOR's utility costs to comply with that agreement and the Department of Housing and Urban Development's regulations pertaining to the Section 8 Housing Voucher Program.  Defendant's promise to not charge RELATOR amounts above the amount the Housing Authority set as RELATOR's rent was material to the San Francisco Housing Authority's decision pay Defendant the amount of housing subsidy that the Housing Authority paid Defendants because if RELATOR could afford such side payments, the San Francisco Housing Authority would have set RELATOR's rent higher and would have accordingly set the Housing Authority's assistance payments lower.

43.     Defendant JIM YAN LOUIE violated the Federal False Claims Act by submitting a false claim to the Federal Government when Defendant promised to not charge RELATOR amount in excess of RELATOR's rent set by the Housing Authority.  Defendant knew such claim to be false, because shortly after the claim was made, at the outset of RELATOR's tenancy, Defendant forced RELATOR to $269 in excess of the rent set by the San Francisco Housing Authority.  Each month for which RELATOR was forced to pay such side payment in this manner was a separate violation of the Federal False Claims Act.

44.     Similarly, Defendants knew that they were not entitled to collect the Housing Authority's assistance payments from RELATOR.  Yet, Defendant demanded RELATOR pay such amounts in the two pay rent or quit notices described above.  Each time Defendant issued RELATOR a pay or quit eviction notice in this manner was a separate violation of the Federal False Claims Act.

45.     Defendants, by knowingly conspiring to cause to be made or used false statements or records material to a false claim including, i.e., false certifications or representations of compliance with the Department of Housing and Urban Development's regulations pertaining to the Section 8 Housing Voucher Program, which Defendant caused to be made when Defendant applied for Federal subsidy, violated 31 U.S.C § 3729(a)(1)(B) and 31 U.S.C § 3729(a)(1)(C).

46.     Defendants, through their concerted efforts to conspire to illegally exact excessive subsidy payments from the Government violated 31 U.S.C § 3729(a)(1)(A) and 31 U.S.C § 3729(a)(1)(C).

47.     In knowingly conspiring to induce RELATOR and the Government to enter into the Agreement, Defendants JIM YAN LOUIE and his agents presented the Lease and HAP Contract for approval by RELATOR and the Government but, did not tell RELATOR or the Government that RELATOR would be charged side payments and the Housing Authority's assistance payments.  Through such acts, Defendants conspired to fraudulently induce RELATOR and the Government to believe that Defendant would not attempt to coerce RELATOR to pay amounts in excess of RELATOR's rent set by the Housing Authority and did cause RELATOR and the Government to so believe while Defendants knew that Defendants would attempt to coerce RELATOR to pay amounts in excess of RELATOR's rent set by the Housing Authority and thereby violated 31 U.S.C § 3729(a)(1)(A), 31 U.S.C § 3729(a)(1)(B) and 31 U.S.C § 3729(a)(1)(C).

48.     Defendants continued to receive subsidy payments from the Government while violating Defendant's obligations under the HAP Contract.

49.     All of the Defendants' conduct described in this Complaint was knowing, as that term is used in the Federal False Claims Act.

50.     By demanding that RELATOR pay the $269 side payments when Defendants promised RELATOR and the San Francisco Housing Authority that RELATOR would not have to pay any

amounts in excess of RELATOR's rent as set by the Housing Authority, Defendants accepted "side payments" from RELATOR, breached obligations to comply with applicable statutes, Department of Housing and Urban Development regulations, and Defendant's contracts with RELATOR and the San Francisco Housing Authority.

51.     As a direct and proximate result of the above mentioned conduct, RELATOR paid excessive utility costs and the Government was damaged in the full amount of every subsidy payment made to Defendant as Defendant was in breach of the HAP Contract at all times during the subject tenancy.

## COUNT II
### (Violation of Civil Code § 1942.5)

52.     RELATOR re-alleges and incorporates herein the allegations of all preceding paragraphs as though fully set forth by this reference.

53.     Defendant issued his January 5, 2016, 90-day eviction notice to RELATOR in retaliation for RELATOR delivering RELATOR's December 8, 2015, letter to Defendant, stating that RELATOR would cease paying the $269 side payments.  Any subsequent eviction actions against RELATOR will also be based on that retaliatory motive.

54.     As a proximate result of the above stated acts of Defendants, RELATOR suffered and will continue to suffer emotional distress, undue financial burden and attorney's fees as herein alleged.

## COUNT III
### (Harassment - Violation of San Francisco Administrative Code § 37.10B)

55.     RELATOR re-alleges and incorporates all prior allegations as though fully set forth herein.

56.     The acts described above constitute unlawful harassment under San Francisco Administrative Code § 37.10B (hereinafter the "Tenant Harassment Ordinance") as Defendants, in bad faith, refused to perform their duties and obligations.  Defendants' bad faith conduct included, but was not limited to Defendants' causing RELATOR pay excessive amounts for RELATOR's occupancy of the Subject Premises; Defendant's demanding from RELATOR amounts to which Defendants were not entitled under the HAP Contract and HUD regulations and Defendants' attempts to evict RELATOR in retaliation for RELATOR's refusal to continue paying Defendants the illegal side payments.

57.     As a direct, proximate, and foreseeable result of Defendants' actions, RELATOR has suffered general and special damages in an amount to be determined at trial, but in no event less than the jurisdictional limits of this Court, and trebled pursuant to San Francisco's Tenant Harassment Ordinance. Defendants' repeated harassment of RELATOR, as detailed herein, was so outrageous that Defendants acted in knowing violation or reckless disregard of San Francisco's Tenant Harassment Ordinance and therefore RELATOR is entitled to trebled damages for mental and emotional distress.

58.     As a direct, proximate, and foreseeable result of Defendants' illegal actions done with oppression, fraud and malice, RELATOR suffered financial hardship and suffered and continues to suffer considerable mental anguish, fear and anxiety in an amount to be determined at trial and trebled according to statute.

59.     Pursuant to San Francisco's Tenant Harassment Ordinance, RELATOR is entitled to recover treble his actual damages and reasonable attorney fees incurred in the prosecution of this action.

**WHEREFORE**, RELATOR prays for judgment as follows:

1. Judgment against Defendants for three times the amount of damages Relator and the United States have sustained as a result of Defendants' actions, plus a civil penalty of $11,000 for each violation of the Federal False Claims Act.
2. 25% of the proceeds of this action if the United States elects to intervene and 30% if it does not.
3. Three times his special and general damages occasioned by emotional distress, and attorney's fees.
4. All rent paid by RELATOR and the Government.
5. $2,000 statutory damages for each attempted retaliatory eviction in violation of C.C. § 1942.5.
6. His attorney's fees, costs and expenses.
7. Punitive and statutory damages.
8. Such other relief as the Court deems just and appropriate.

Respectfully Submitted,

Dated: February 5, 2016

_____

Jason Hain Esq.
Attorney for RELATOR,
WILLIAM ARTEMUS

COMPLAINT FOR VIOLATION OF 31 U.S.C. § 3729, OTHER CAUSES AND JURY DEMAND
Page 11 of 12

1

## CERTIFICATE OF SERVICE

2   I hereby certify that a true and correct copy of the foregoing complaint for violations of the Federal False

3   Claims Act and all documentation of the facts underlying the allegations of said complaint has been

4   served upon the following on the date and in the manner listed below:

5

6

7   ### VIA FEDERAL EXPRESS

8   Hon. Loretta E. Lynch
    950 Pennsylvania Avenue, NW
9   Washington, DC 20530

10  ### VIA HAND DELIVERY

11  Melinda Haag
    United States Attorney
12  450 Golden Gate Avenue
13  San Francisco, CA 94102

14

15

16

17

18  Dated: February 5, 2016                        By: _____

19                                                  Jason Hain Esq.
                                                    LAW OFFICES OF JASON HAIN
20                                                  30 Cumberland St.
                                                    San Francisco, CA 94110
21                                                  Attorneys for RELATOR
                                                    WILLIAM ARTEMUS
22

23

24

25

26

27

28

COMPLAINT FOR VIOLATION OF 31 U.S.C. § 3729, OTHER CAUSES AND JURY DEMAND
Page 12 of 12

EXHIBIT A

# LEASE AGREEMENT

THIS AGREEMENT is made and entered into this _6th_ day of _June_, _2009_ between
<br>(Day) (Month) (Year)

_Jim Louie_ "Owner/Agent", whose address and phone
<br>(Name of Owner/Agent)

number are _210 TEDDY AVE. SF, CA 94134 / 415-694-2299_.
<br>(Address and Telephone of Owner/Agent)

and _William C. Artemus_ "Resident."

THE PARTIES AGREE AS FOLLOWS:

1. **RENTAL UNIT:** Subject to the terms and conditions of this Agreement, Owner rents to Resident and Resident rents from Owner, for residential use only,

   the premises located at: _210 TEDDY AVE_, Unit # (if applicable) _—_,
   <br>(Street Address)

   _SF_ CA, _94134_
   <br>(City) (Zip)

2. **RENT:** Rent is due in advance on the _1th_ day of each and every month, at $ _1558_ per month, beginning on _07/01/09_, payable to Owner/Agent at _210 TEDDY AVE, SF, CA 94134_. Payments made in
   <br>(Date) (Address where payments should be delivered)

   person may be delivered to Owner/Agent between the hours of _N/A_ and _N/A_ on the following days of the week:

   ☒ Monday ☐ Tuesday ☒ Wednesday ☒ Thursday ☒ Friday ☒ Saturday ☐ Sunday ☐ Other _N/A_

   Acceptable methods of payment:
   ☒ Personal Check ☒ Cashier's Check ☒ Money Order ☐ EFT/Credit (see Owner/Agent for details) and ☐ Cash

   If rent is paid after the _5_ of the month, there will be a late charge of $ _134_ assessed. The parties agree that this late fee is presumed to be the amount of damage sustained by late payment of rent. It would be impracticable or extremely difficult to fix the actual damage. This sum represents a reasonable endeavor by the Owner/Agent to estimate fair average compensation for any loss that may be sustained as a result of late payment of rent. Pursuant to California law, if Resident passes a check on insufficient funds, Resident will be liable to Owner/Agent for the amount of the check and a service charge of $ _50_, not to exceed $25 for the first check passed on insufficient funds, and $35 for each subsequent check passed on insufficient funds. The Owner/Agent may refuse a personal check as the form of rent payment to cure a Three-Day Notice to Pay Rent or Quit.

3. **SECURITY DEPOSIT:** Resident shall deposit with Owner/Agent, as a security deposit, the sum of $ _1300_
   ☒ prior to taking possession of the unit **or** ☐ no later than _____ (check one).

   Resident shall not use the security deposit to pay any month's rent. Owner/Agent may withhold from the security deposit only such amounts as are reasonably necessary to remedy Resident defaults including, but not limited to, the following:
   (a) defaults in the payment of rent,
   (b) to repair damages to the premises caused by Resident, exclusive of ordinary wear and tear, and/or
   (c) to clean the premises, if necessary, upon termination of the tenancy in order to return the unit to the same level of cleanliness it was in at the inception of the tenancy, and/or
   (d) to restore, replace, or return personal property or appurtenances, exclusive of ordinary wear and tear.
   No later than 21 calendar days after Owner/Agent has regained possession of the premises, Owner/Agent shall return any remaining portion of such security deposit to Resident.

4. **TERM:** The term of this Agreement is for _1 year_, beginning on _07/01/09_ and ending on _07/01/10_, at which time this
   <br>(Term) (Date) (Date)

   Lease shall terminate without further notice. Any holding over thereafter shall result in Resident being liable to Owner/Agent for daily rental damages equal to the current market value of the unit, divided by 30. A "month-to-month" tenancy subject to the terms and conditions of this agreement shall be created only if Owner/Agent accepts rent from Resident thereafter, and if so accepted, tenancy may be terminated by Resident after service upon the Owner/Agent of a written 30-day Notice of Termination. Except as prohibited by law, that month-to-month tenancy may be terminated by the Owner/Agent by service upon the Resident of a written 60-day notice of termination of tenancy. However, Civil Code Section 1946.1 provides that "if any tenant or resident has resided in the dwelling for less than one year", the Owner/Agent may terminate the tenancy by service upon the Resident of a written 30-day notice.



*California Apartment Association Approved Form*
*www.caanet.org*
*Form 2.1 – Revised 1/09 - ©2009 – All Rights Reserved*
*Page 1 of 4*

Unauthorized Reproduction of Blank Forms is Illegal.



5.  **UTILITIES:** Resident shall pay for all utilities, services and charges, if any, made payable by or predicated upon occupancy of Resident, except: _N/A_. Resident shall have the following utilities connected at all times during the tenancy (check as applicable): ☐Gas ☐Electric ☐Water ☐Trash ☐Sewer ☐Other: _____. Disconnection of utilities due to non-payment is a material violation of this Agreement. _Owner provides all utilities._

6.  **CASH PAYMENT:** The Owner/Agent may demand or require cash as the exclusive form of payment of rent or deposit of security if the tenant has previously attempted to pay the Owner/Agent with a check drawn on insufficient funds or the tenant has instructed the drawee to stop payment on a check, draft, or order for the payment of money.  If the Owner/Agent chooses to demand or require cash payment under these circumstances, the Owner/Agent shall give the Resident a written notice stating that the payment instrument was dishonored and informing the Resident that the Resident shall pay in cash for a period determined by Owner/Agent, not to exceed three months, and attach a copy of the dishonored instrument to the notice.

7.  **OCCUPANTS:** Premises shall be occupied only by the following named person(s):

| William C Artemus | 02/01/1943 | N/A | |
|---|---|---|---|
| Name | Birthdate | Name | Birthdate |
| N/A | | N/A | |
| Name | Birthdate | Name | Birthdate |

8.  **PROHIBITIONS:** Without Owner/Agent's prior written permission as an addendum to this Agreement, no pets, no waterbeds, no gas or charcoal grills or barbeques or _N/A_ shall be kept or allowed in or about the premises.

9.  **QUIET ENJOYMENT:** Resident shall not violate any criminal or civil law, ordinance or statute in the use and occupancy of the premises, commit waste or nuisance, annoy, molest or interfere with any other Resident or neighbor. Any such action may result in the immediate termination of this Agreement as provided herein and by law.

10. **REPAIRS AND ALTERATIONS:** Except as provided by law, no repairs, decorating or alterations shall be done by Resident without Owner/Agent's prior written consent. Resident shall notify Owner/Agent in writing of any repairs or alterations contemplated. Decorations include, but are not limited to, painting and wallpapering. Resident shall hold Owner/Agent harmless and indemnify Owner/Agent as to any mechanics lien recordation or proceeding caused by Resident. Resident may not make any alterations to cable or telephone inside wiring (such as may occur when changing telecommunications providers or adding phone lines) without prior written consent of the Owner/Agent. The notice shall include the name, address, and telephone number of any new telecommunication provider. Resident agrees to pay all costs resulting from the alteration and agrees to pay to the Owner/Agent any costs associated with restoring the inside wiring to the condition at the time of move-in, except for reasonable wear and tear.

11. **ACCEPTANCE OF PREMISES:** Resident has inspected the premises, furnishings and equipment, and has found them to be satisfactory. All plumbing, heating and electrical systems are operative and deemed satisfactory.

12. **CARE, CLEANING, MAINTENANCE AND INSURANCE:** Resident agrees to leave the premises in the same condition as it was received, subject to normal wear and tear. Resident acknowledges that the damage caused by smoking tobacco products is considered above normal wear and tear and will damage surfaces and fixtures, including, the carpet, carpet pad, wallboard, window coverings and ceilings. Depending on the severity of the damage, costs for restoration of the unit may include, but are not limited to, cleaning, sealing, painting, deodorizing, and possible replacement of fixtures and various surface materials. Except as prohibited by law, Resident shall keep the premises and furniture, furnishings and appliances, and fixtures, which are rented for Resident's exclusive use, in good order and condition. Upon move-out, Resident agrees to return the unit to the same level of cleanliness it was in at the inception of the tenancy. Resident ☐ is ☒ is not (check one) responsible for the upkeep of the yard and landscaping. Resident shall pay Owner/Agent for costs to repair, replace or rebuild any portion of the premises damaged by the Resident, Resident's guests or invitees. Resident's property is not insured by Owner/Agent. Resident is not a co-insured and is expressly excluded from any insurance policy held by Owner/Agent which is now in effect or becomes effective during the term of this Agreement.

13. **WAIVER OF BREACH:** The waiver of either party of any breach shall not be construed to be a continuing waiver of any subsequent breach. The receipt by Owner/Agent of the rent with the knowledge of any violation of a covenant or condition hereto shall not be deemed a waiver of such breach. No waiver by either party of the provisions herein shall be deemed to have been made unless expressed in writing and signed by all parties to this Rental Agreement.

14. **JOINT AND SEVERAL LIABILITY:** The undersigned Resident(s), whether or not in actual possession of the premises, are jointly and severally liable for all obligations under this Rental Agreement, and shall indemnify Owner/Agent for liability arising prior to the termination of the Rental Agreement for personal injuries or property damage caused or permitted by Resident(s), their guests and invitees. This does not waive "Owner/Agent's duty of care" to prevent personal injury or property damage where that duty is imposed by law.



California Apartment Association Approved Form
www.caanet.org
Form 2.1 – Revised 1/09 – ©2009 – All Rights Reserved
Page 2 of 4

Unauthorized Reproduction of Blank Forms is Illegal



**15. ENTRY:** California law allows Owner/Agent or his/her employee(s) to enter the premises for certain purposes during normal business hours. The Owner/Agent will provide written notice to the Resident prior to the entry of the dwelling unit whenever required by state law. (Civil Code Section 1954.) Resident's non-compliance with Owner/Agent's lawful request for entry is a material breach of this Agreement that may be cause for immediate termination as provided herein and by law.

**16. SUBLETTING AND ASSIGNMENT:** No portion of the premises shall be sublet nor this Agreement assigned. Any attempted subletting or assignment by Resident shall, at the election of Owner/Agent, be an irremediable breach of this Agreement and cause for immediate termination as provided herein and by law.

**17. BREACH OF LEASE:** In the event that Resident breaches this Lease Agreement, Owner/Agent shall be allowed at Owner/Agent's discretion, but not by way of limitation, to exercise any or all remedies provided Owner/Agent by California Civil Code Section 1951.2 and 1951.4. Damages Owner/Agent "may recover" include the worth at the time of the award of the amount by which the unpaid rent for the balance of the term after the time of award, or for any shorter period of time specified in the Lease Agreement, exceeds the amount of such rental loss for the same period that the Resident proves could be reasonably avoided.

**18. SALE OF PROPERTY:** In the event of the sale or refinance of the property: If Owner/Agent presents to Resident a "Resident's Certification of Terms - Estoppel Certification," or other similar Estoppel Certification form, Resident agrees to execute and deliver the certificate acknowledging that this Agreement is unmodified and in full force and effect, or in full force and effect as modified with the consent of Owner/Agent, and stating the modifications, within ten (10) days of written notice. Failure to comply shall be deemed Resident's acknowledgement that the certificate as submitted by Owner/Agent is true and correct and may be relied upon by any lender or purchaser.

**19. SMOKE DETECTION DEVICE:** The premises are equipped with a functioning smoke detection device(s), and Resident shall be responsible for testing the device weekly and immediately reporting any problems, maintenance or need for repairs to Owner/Agent. If battery operated, Resident is responsible for changing the detector's battery as necessary. Owner/Agent shall have a right to enter the premises to check and maintain the smoke detection device as provided by law.

**20. NOTICE:** Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides.

**21. ADDENDA:** By initialing as provided, Resident acknowledges receipt of the following applicable addenda, as indicated, copies of which are attached hereto, and are incorporated as part of this Agreement.

| | | |
|---|---|---|
| _✗_ Resident Policies Addendum | ____ Smoke Detector Addendum | ____ C C & Rs |
| _✗_ Move-In/Move-Out Itemization | ____ Pet Addendum | _✗_ Unlawful Activity Addendum |
| ____ Pest Control Notice Addendum | ____ Asbestos Addendum | ____ Proposition 65 Brochure |
| ____ Satellite Addendum | ____ Lead Disclosure Addendum | _✗_ Other: _mold notification addendum_ |
| ____ Pool Rules Addendum | _✗_ Mold Notification Addendum | _✗_ Other: _Tobacco Smoke-Free Area Addendum_ |
| | | _✗_ Other: _Grilling Addendum_ |

**22. ENTIRE AGREEMENT:** This Agreement, which includes all attachments referred to above, constitutes the entire Agreement between the parties and cannot be modified except in writing and signed by all parties, except as permitted by applicable law. Neither Owner/Agent, nor any agent or employee of Owner/Agent has made any representations or promises other than those set forth herein.

**23. CREDIT REPORTS:** A negative credit report reflecting on your credit history may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. Resident expressly authorizes Owner/Agent (including a collection agency) to obtain Resident's consumer credit report, which Owner/Agent may use if attempting to collect past due rent payments, late fees, or other charges from Resident, both during the term of the Agreement and thereafter.



*California Apartment Association Approved Form*
*www.caanet.org*
*Form 2.1 – Revised 1/09 - ©2009 – All Rights Reserved*
*Page 3 of 4*

Unauthorized Reproduction of Blank Forms is Illegal.



**24. ATTORNEYS' FEES:** If any legal action or proceeding is brought by either party to enforce any part of this Agreement, the prevailing party shall recover, in addition to all other relief, reasonable attorneys' fees and court costs, unless one of the following two boxes is checked:

☐ the prevailing party shall recover, in addition to all other relief, attorneys' fees not to exceed $ _N/A_ , plus court costs.
Or ☒ each party shall be responsible for their own attorneys' fees and court costs.

The undersigned Resident(s) acknowledge(s) having read and understood the foregoing, and receipt of a duplicate original.

| | | | |
|---|---|---|---|
| _061809_ | _William C. Antuna_ | | |
| Date | Resident | Date | Resident |
| | | | |
| Date | Resident | Date | Resident |
| _6-8-09_ | _signature_ | | |
| Date | Owner/Agent | | |



*California Apartment Association Approved Form*
www.caanet.org
**Form 2.1** – Revised 1/09 - ©2009 – All Rights Reserved
Page 4 of 4

Unauthorized Reproduction of Blank Forms is Illegal.



# RESIDENT POLICIES AND "HOUSE RULES" ADDENDUM

Page _2_
of Agreement

## I.  GENERAL

1.  This document is an Addendum and is part of the Rental/Lease Agreement, dated _06 - 15 - 09_ between

_____ Jim  Louie _____ (Owner/Agent) and

_____ William  C.  Artemus _____ (Resident) for the

premises located at _____ 210  TEDDY  Ave _____, Unit # (if applicable) _____ ⟋ _____
(Street Address)
_____ S F _____, CA _94134_ .
(City)                              (Zip)

2.  New policies and rules or amendments to this document may be adopted by Owner/Agent upon giving 30 days' notice in writing to Resident.

3.  Guests who stay more than _10_ days in a _One_ (month/year (circle one) period may constitute a breach of the Rental/Lease Agreement. At the discretion of the Owner/Agent, guests may be required to go through the application process and, if approved, must sign a Rental/Lease Agreement.

## II.  NOISE AND CONDUCT

1.  Residents and their guests shall not make or allow any excessive noise in the unit nor permit any actions which will interfere with the rights, comforts or conveniences of other persons.

2.  Residents and their guests shall refrain from playing musical instruments, television sets, stereos, radios, and other devices at a volume which will disturb other persons.

3.  Residents and their guests shall refrain, and shall ensure that Resident's guests likewise refrain, from activities and conduct outside of the unit (in common areas, parking areas, or recreation facilities) which are likely to annoy or disturb other persons.

4.  Resident and their guests shall refrain from creating, or allowing to be created, any noise that is disturbing to other Residents between the hours of _11:45_ p.m. and _5_ a.m.

## III.  CLEANLINESS AND TRASH

1.  Resident shall keep the unit clean, sanitary and free from objectionable odors at all times.

2.  Resident shall ensure that papers, cigarette butts and trash are placed in appropriate receptacles so that litter is not created on or about Resident's unit.

3.  Resident shall ensure that trash and other materials are not permitted to accumulate so as to cause a hazard or be in violation of any health, fire or safety ordinance or regulation.

4.  Resident shall ensure that garbage is not permitted to accumulate and that it is placed on a daily basis in the trash containers provided for that purpose. Resident shall ensure that large boxes are broken apart before being placed in the trash containers. Resident shall be responsible, at Resident's expense, for hauling to the dump those items too large to fit in the trash containers.

5.  Resident shall ensure that furniture is kept inside the unit and that unsightly items are kept out of view.

6.  Resident shall refrain from leaving articles in the hallways or other common areas.

7.  Resident shall refrain from shaking or hanging clothing, curtains, rugs, and other coverings and cloths outside of any window, ledge, or balcony.

8.  Resident shall refrain from disposing of any combustible or hazardous material in trash containers or bins.



*California Apartment Association Approved Form*
*www.caanet.org*
*Form 17.0 – Revised 1/07 - ©2007 – All Rights Reserved*
*Page 1 of 2*

Unauthorized Reproduction of Blank Forms is Illegal.



## IV. SAFETY/SECURITY

1. Security is the responsibility of each Resident and each guest. Owner/Agent assumes no responsibility or liability, unless otherwise provided by law, for Resident's and guests' safety and security, or for injury or damage caused by the criminal acts of other persons.

2. Resident should ensure that all doors are locked during Resident's absence. Resident must notify Owner/Agent if locks become inoperable.

3. Resident should ensure that all appliances are turned off before departing from the premises.

4. When leaving for an extended period, Resident should notify Owner/Agent how long Resident will be away.

5. Prior to any planned absence from the unit, Resident shall give Owner/Agent authority to allow entry to the unit to any person or provide Owner/Agent with the name of any person or entity permitted by Resident to enter the unit.

6. Resident shall refrain from smoking in bed.

7. Resident shall refrain from using or storing gasoline, cleaning solvent or other combustibles in the unit.

8. Resident shall refrain from using charcoal barbecues on porches, balconies or patios adjacent to buildings as such use would constitute a fire hazard. Use of barbecues or propane grills indoors is prohibited.

9. Resident shall ensure that no personal belongings, including bicycles, play equipment or other items shall be left unattended in the halls, stairways or about the building.

## V. MAINTENANCE, REPAIRS AND ALTERATIONS

1. Resident shall advise Owner/Agent of any items requiring repair, such as light switches or dripping faucets. Resident shall make repair requests as soon after the defect is noted as is practical.

2. Resident shall refrain from making service requests directly to maintenance personnel unless Resident is directed to do so by Owner/Agent.

3. Resident shall refrain from making any alterations or improvements to the unit without the consent of Owner/Agent. Resident shall refrain from using adhesives, glue or tape to affix pictures or decorations.

4. Resident shall refrain from using aluminum foil as a window covering and shall obtain the approval of Owner/Agent before using any window covering visible from the exterior of the building.

5. Costs of repair or clearance of stoppages in waste pipes or drains, water pipes or plumbing fixtures caused by Resident's negligence or improper usage are the responsibility of the Resident. Payment for corrective action must be paid by Resident on demand.

## VI. PARKING

1. Number of parking spaces assigned to Resident's unit _N/A_. Only one vehicle may be parked in each space.

2. Resident shall only use assigned parking spaces and shall ensure that guests park only in unassigned areas or designated guest parking areas. Resident shall ensure that posted and designated fire zones or "No Parking" areas remain clear of vehicles at all times. Resident shall refrain from parking in unauthorized areas or in another resident's designated parking space. (Vehicles parked in unauthorized areas or in another Resident's space may be towed away at the vehicle owner's expense.)

3. Inoperable, dismantled or partially dismantled, or unregistered vehicles are subject to tow under California Vehicle Code 22658 and any applicable local laws and/or ordinances.

The undersigned Resident(s) acknowledge(s) having read and understood the foregoing.

| Date | Resident | Date | Resident |
|---|---|---|---|
| 0618 | William C. Arteaga | | |
| Date | Resident | Date | Resident |



California Apartment Association Approved Form
www.caanet.org
**Form 17.0** – Revised 1/07 - ©2007 – All Rights Reserved
Page 2 of 2

Unauthorized Reproduction of Blank Forms is Illegal.



# MOLD NOTIFICATION ADDENDUM

Page _3_
of Agreement

This document is an Addendum and is part of the Rental/Lease Agreement, dated _06 – 16 – 09_ between

_Jim Louie_ (Owner/Agent) and

_William C. Artemin_ (Resident) for the

premises located at _210 TEDDY AVE_, Unit # (if applicable) _/_
(Street Address)

_SF_, CA _94134_.
(City)                                      (Zip)

It is our goal to maintain the highest quality living environment for our Residents. The Owner/Agent has inspected the unit prior to lease and knows of no damp or wet building materials and knows of no mold or mildew contamination. Resident is hereby notified that mold, however, can grow if the premises are not properly maintained or ventilated. If moisture is allowed to accumulate in the unit, it can cause mildew and mold to grow. It is important that Residents regularly allow air to circulate in the apartment. It is also important that Residents keep the interior of the unit clean and that they promptly notify the Owner/Agent of any leaks, moisture problems, and/or mold growth.

Resident agrees to maintain the premises in a manner that prevents the occurrence of an infestation of mold or mildew in the premises. Resident agrees to uphold this responsibility in part by complying with the following list of responsibilities:

1. Resident agrees to keep the unit free of dirt and debris that can harbor mold.

2. Resident agrees to immediately report to the Owner/Agent any water intrusion, such as plumbing leaks, drips, or "sweating" pipes.

3. Resident agrees to notify owner of overflows from bathroom, kitchen, or unit laundry facilities, especially in cases where the overflow may have permeated walls or cabinets.

4. Resident agrees to report to the Owner/Agent any significant mold growth on surfaces inside the premises.

5. Resident agrees to allow the owner/agent to enter the unit to inspect and make necessary repairs.

6. Resident agrees to use bathroom fans while showering or bathing and to report to the Owner/Agent any non-working fan.

7. Resident agrees to use exhaust fans whenever cooking, dishwashing, or cleaning.

8. Resident agrees to use all reasonable care to close all windows and other openings in the premises to prevent outdoor water from penetrating into the interior unit.

9. Resident agrees to clean and dry any visible moisture on windows, walls, and other surfaces, including personal property, as soon as reasonably possible. (Note: Mold can grow on damp surfaces within 24 to 48 hours.)

10. Resident agrees to notify the Owner/Agent of any problems with the air conditioning or heating systems that are discovered by the Resident.

11. Resident agrees to indemnify and hold harmless the Owner/Agent from any actions, claims, losses, damages, and expenses, including, but not limited to, attorneys' fees that the Owner/Agent may sustain or incur as a result of the negligence of the Resident or any guest or other person living in, occupying, or using the premises.

The undersigned Resident(s) acknowledge(s) having read and understood the foregoing.

_06/18/09_ _William C. Artemin_ _____ _____
Date                  Resident                                    Date                  Resident

_____ _____ _____ _____
Date                  Resident                                    Date                  Resident

_6-8-09_ _Jim Louie_
Date                  Owner/Agent



**California Apartment Association** Approved Form
www.caanet.org
**Form 2.7** – Revised 1/07 - ©2007 – All Rights Reserved
Page 1 of 1

Unauthorized Reproduction
of Blank Forms is Illegal.



# TOBACCO SMOKE-FREE AREAS ADDENDUM

Page _4_
of Agreement

This document is an Addendum and is part of the Rental/Lease Agreement, dated _06 - 15 - 09_ between

_____ Jim   Louis _____ (Owner/Agent) and

_____ William   C.   Artemus _____ (Resident) for the

premises located at _____ 210   TEDDY   Ave _____, Unit # (if applicable) ___/___
                              (Street Address)

_____ SF _____, CA _94134_.
       (City)                                    (Zip)

1. **Purpose:** The parties desire to mitigate (i) the irritation and known health effects of secondhand smoke; (ii) the increased maintenance, cleaning, and redecorating costs from smoking; (iii) the increased risk of fire from smoking; and (iv) the high costs of fire insurance for properties where smoking is permitted.

2. **Smoke Free Areas:** Resident agrees and acknowledges that each of the following areas of the property has been designated as a smoke-free living environment and Resident and members of Resident's household shall not smoke tobacco products in these areas, nor shall Resident permit any guest or visitor under the control of Resident to do so.

Check one:

☐  Smoking of tobacco products is prohibited on the entire property, including individual units, common areas, every building and adjoining grounds.

☑  Smoking of tobacco products is prohibited on the entire property except the following areas:

_____ Garden   Area _____

3. **Promotion of No-Smoking Policy:** Resident shall inform his or her guest of the Smoke-Free Areas. Resident shall promptly notify Owner/Agent in writing of any incident where tobacco smoke is migrating into Resident's unit from sources outside of Resident's Unit.

4. **Owner/Agent Not Guarantor of Smoke-Free Environment:** Resident acknowledges that Owner/Agent's adoption of Smoke-Free Areas, does not make the Owner/Agent the guarantor of the Resident's health or of the smoke-free condition of the areas listed in Section 3 above. However, Owner/Agent shall take reasonable steps to enforce this addendum. Owner/Agent shall not be required to take steps in response to smoking unless Owner/Agent has actual knowledge or has been provided written notice.

5. **Other Residents Are Third Party Beneficiaries of this Addendum:** Owner/Agent and Resident agree that the other Residents of the property are the third party beneficiaries of this Addendum. A Resident may sue another Resident to enforce this Addendum but does not have the right to evict another Resident. Any lawsuit between Residents regarding this Addendum shall not create a presumption that the Owner/Agent has breached this Addendum.

6. **Effect of Breach:** A breach of this Addendum by the Resident shall be deemed a material breach of the Rental/Lease Agreement and grounds for immediate termination of the Rental/Lease Agreement by the Owner/Agent.

7. **Disclaimer:** Resident acknowledges that this Addendum and Owner/Agent's efforts to designate Smoke-Free Areas do not in any way change the standard of care that the Owner/Agent would have to any Resident household to render buildings and premises designated as smoke free any safer, more habitable, or improved in terms of air quality that any other rental premises. Owner/Agent specifically disclaims any implied or express warranties that the building common areas or Resident's premises will have any higher or improved air quality standards than any other rental property. Owner/Agent cannot and does not warrant or promise that the Rental Premises or any other portion of the property including common areas will be free from secondhand smoke. Resident acknowledges that Owner/Agent's ability to police, monitor or enforce this Addendum is dependent in significant part on voluntary compliance by Resident and Resident's guests.



*California Apartment Association Approved Form*
*www.caanet.org*
*Form 34.0 – Revised 1/07 – ©2007 – All Rights Reserved*
*Page 1 of 2*

Unauthorized Reproduction
of Blank Forms is Illegal.



*Page 5*
*of Agreement*

# GRILLING ADDENDUM

This document is an Addendum and is part of the Rental/Lease Agreement, dated _06 – 15 – 09_ between
<u>(Date)</u>

_____Jim Lowie_____ "Owner/Agent" and
(Name of Owner/Agent)

_____William C. Artemus_____ "Resident" for the

premises located at _____210 TEDDY Ave._____, Unit # (if applicable) _____
(Street Address)

_____SF_____, CA _94134_
(City)                                              (Zip)

1. The Rental/Lease Agreement provides that without Owner/Agent's prior written consent, no gas or charcoal grills or barbecues shall be allowed in or about the premises.

2. Owner/Agent consents to Resident keeping and operating the type of grill or barbecue described here:

_____One Charcoal_____(hereinafter "grill").

3. In the event of default by Resident of any of the terms in this Addendum, Resident agrees, within three days after receiving written notice of default from Owner/Agent, to cure the default or vacate the premises. Resident agrees Owner/Agent may revoke permission to keep and operate said grill or barbecue on the premises by giving Resident written thirty (30) day notice.

4. Resident agrees to comply with all applicable ordinances, regulations and laws governing grills and barbecues.

5. Resident agrees that the grill or barbecue will not be used except in the following area(s):

_____Garden,_____

6. Resident agrees to maintain and operate the grill in a safe manner. Resident agrees to uphold this responsibility in part by complying with the following list of responsibilities:
   - <u>Follow manufacturers' directions for safe operation, storage, and maintenance of your grill.</u> If the manual is missing, contact the manufacturer for a replacement or check the company's web site for an online copy.
   - <u>Check to see that the grill is in good working order.</u> For gas grills, be sure that all gas lines and valves are intact. For charcoal grills, check for holes where ash or coals can fall through. Ensure that the grill is stable and will not tip over.
   - <u>Set up the grill in a safe place.</u> Choose a firm, level surface at least 10 feet away from walls, siding, and deck rails; overhangs, eaves, and awnings; shrubs and branches; and furniture and other combustibles.
   - <u>Only use gas and charcoal grills *outdoors*.</u> When burned, gas and charcoal produce deadly carbon monoxide, an odorless, colorless gas that can kill in a matter of minutes. Never use a grill indoors, or in a garage, even if the door is open. Carbon monoxide can enter the apartment and injure or kill the people inside very quickly.
   - <u>Have a fire extinguisher (ABC type) or a bucket of water handy</u> in case of a fire.
   - <u>Have a spray bottle of water ready</u> to control flare-ups.
   - <u>Have access to a phone</u> in case of emergencies.
   - <u>Start the grill properly,</u> using only approved methods. Before lighting a gas grill, open the cover.
   - <u>Stay by the grill while it is in use</u> and while it is still hot.
   - <u>If Resident smells gas while cooking:</u> Turn off the grill. Move away from the grill. Keep everyone away. Do not move, use, or light the grill until it has been inspected and repaired.
   - <u>Use appropriate grilling tools.</u> Choose long-handled heat-resistant cooking tools and heat-resistant mitts.
   - <u>Keep people away from the grill,</u> especially children.
   - <u>Do not attempt to move a grill that is in use.</u>
   - <u>Clean the grill after use,</u> removing food fragments, sauces and marinades, and accumulated fat or grease. All these increase the risk of flare-ups and fires.



*California Apartment Association Approved Form*
www.caanet.org
Form 35.0 – Created 1/09 – ©2009 – All Rights Reserved
Page 1 of 2

**Unauthorized Reproduction of Blank Forms is Illegal.**



7. Resident agrees to use the following special precautions for gas grills (if applicable):

Before using the grill:

- <u>Check the hose or tubes</u> for leaks, cracks, brittleness, holes, and kinks. Make sure there are no sharp bends in the hose or tubing. Using a pipe cleaner or wire, clear any blockages caused by dirt, insects, etc.
- <u>Check the connections</u> between the tank, hoses or tubes, and the burner, to ensure that they have been connected properly and completely.
- <u>Check for gas leaks.</u> Before using the gas grill, and especially after attaching the propane tank, apply soapy water to the hose and connections; any leaks will be made evident by the escaping bubbles. *Never use a match or lighter to look for a gas leak!* If you can smell gas, then there is a gas leak.
- <u>Test the spark igniter.</u> Every time you activate the igniter, it should make a spark to create a flame and ignite the gas.
- <u>If the grill has a gas leak</u>, do not use it. Contact a qualified technician for repairs before using the grill.
- <u>Do not attempt to repair the grill yourself.</u> If the tank valves or connections are leaking, broken, or malfunctioning, do not attempt to repair them; contact a qualified technician or discard the unit.
- <u>Protect the gas tubes and hoses</u> from hot surfaces, grease, and bumps.
- <u>Store propane gas cylinders safely:</u>  store them in an upright position; be sure that they are stored away from heat, spark, and flame; and secure them against access, theft, or tampering.
- <u>Do not store gas cylinders inside buildings or garages.</u> If you store your gas grill indoors when it is not in use, disconnect the gas cylinder and leave it outside.
- <u>Do not store filled gas cylinders in a vehicle</u> which might become hot. Heat will raise the pressure inside the tank, increasing the risk of leaks through the relief valve.
- <u>Keep flammable and combustible materials away</u> from the grill and gas tanks.

8. Resident shall be liable to Owner/Agent for all damages or expenses incurred by or in connection with grill, and shall hold Owner/Agent harmless and indemnify Owner/Agent for any and all damages or costs in connection with grill.

9. Resident shall deposit with Owner/Agent an additional security deposit of $_____0_____.
Owner/Agent ☐does ☒does not (check one) require Resident to carry renter's insurance to cover damages caused by use and/or storage of the grill.

The undersigned Resident(s) acknowledge(s) having read and understood the foregoing:

06/8/09
_____    _William C. Artemis_____    _____    _____
Date                        Resident                                   Date                        Resident


_____    _____    _____    _____
Date                        Resident                                   Date                        Resident

6-8-09
_____    _Tony Hsieh_____
Date                        Owner/Agent


*California Apartment Association Approved Form*
*www.caanet.org*
*Form 35.0 – Created 1/09 – ©2009 – All Rights Reserved*
*Page 2 of 2*

Unauthorized Reproduction of Blank Forms is Illegal.



# UNLAWFUL ACTIVITY ADDENDUM

Page _6_
of Agreement

This document is an Addendum and is part of the Rental/Lease Agreement, dated _06 - 15 - 09_ between

_____ Jim   Louie _____ (Owner/Agent) and

_____ William   C.   Artemus _____ (Resident) for the

premises located at _____ 210 TEDDY Ave _____, Unit # (if applicable) ___

_(Street Address)_

_____ SF _____, CA _94134_.

_(City)_ _____ _(Zip)_

1. Resident, members of the Resident's household, and any guest or other persons under the Resident's control shall not engage in criminal activity, including drug-related criminal activity, on or near property premises. "Drug-related criminal activity" means the illegal manufacture, sale, distribution, use, or possession with intent to manufacture, sell, distribute, or use of a controlled substance (as defined in section 102 of the Controlled Substance Act (21 U.S.C. 802)).

2. Resident, members of the Resident's household, and any guest or other persons under the Resident's control *shall not engage in any act intended to facilitate criminal activity*, including drug-related criminal activity, on or near property premises.

3. Resident and members of the household *will not permit the dwelling unit to be used for, or to facilitate, criminal activity*, including drug-related criminal activity, regardless of whether the individual engaging in such activity is a member of the household or a guest.

4. Resident and members of the household will not engage in the manufacture, sale, or distribution of illegal drugs at any location, whether on or near premises and property or otherwise.

5. Resident, any member of the Resident's household, or a guest or other person under the Resident's control shall not engage in acts of violence or threats of violence, including, but not limited to the unlawful discharge of firearms on or near property/premises.

6. *VIOLATION OF ANY OF THE ABOVE PROVISIONS SHALL BE A MATERIAL VIOLATION OF THE RENTAL/LEASE AGREEMENT AND GOOD CAUSE FOR TERMINATION OF TENANCY.* A single violation of any of the provisions of this Addendum shall be deemed a serious and material violation of the Rental/Lease Agreement. It is understood and agreed that a single violation shall be good cause for termination of the Rental/Lease Agreement. Unless otherwise provided by law, proof of violation shall not require criminal conviction, but shall be by a preponderance of the evidence.

7. In case of conflict between the provisions of this Addendum and any other provisions of the Rental/Lease Agreement, the provisions of this Addendum shall govern.

The undersigned Resident(s) acknowledge(s) having read and understood the foregoing.

_061809_                   _William C. Gateaun_                   _____
Date                        Resident                               Date          Resident

_____                    _____                                _____
Date                        Resident                               Date          Resident

_6-8-09_                    _Jim Louie_
Date                        Owner/Agent



*California Apartment Association Approved Form*
www.caanet.org
*Form 2.4 – Revised 1/08 - ©2008 – All Rights Reserved*
*Page 1 of 1*

Unauthorized Reproduction of Blank Forms is Illegal.



**8.** **Effect on Current Tenants:**  Resident acknowledges that current Residents of the rental community under a prior Rental/Lease Agreement will not be immediately subject to the terms of this Addendum.  As Residents move out, or enter into new Rental/Lease Agreements, this Addendum will become effective for their unit or new agreement.

The undersigned Resident(s) acknowledge(s) having read and understood the foregoing.

_06/18/09_            _William C. Gutierres_
Date                            Resident

_____            _____
Date                            Resident

_6-8-09_            _____
Date                            Owner/Agent

_____            _____
Date                            Resident

_____            _____
Date                            Resident



*California Apartment Association Approved Form*
*www.caanet.org*
*Form 34.0 – Revised 1/07 - ©2007 – All Rights Reserved*
*Page 2 of 2*

**Unauthorized Reproduction of Blank Forms is Illegal.**



EXHIBIT B

SAN FRANCISCO HOUSING AUTHORITY
LEASED HOUSING DIVISION
1815 EGBERT STREET
SAN FRANCISCO, CA 94124
(415) 715-3280/(415) 715-3287-FAX

TENANCY ADDENDUM
SECTION 8 HOUSING CHOICE
VOUCHER PROGRAM

1. Parties:
   Landlord   LOUIE, JIM YAN
   Address    210 TEDDY AVENUE
              SAN FRANCISCO, CA 94134

   TENANT     WILLIAM C ARTEMUS

2. Unit
   Address    210 TEDDY AV LWR
              SAN FRANCISCO, CA 94134

The household consists of the following members:

   WILLIAM ARTEMUS C

3. Term of Lease:
   The term of the Lease begins 06/16/09 and shall
   end on 05/31/10. In the event that a new lease is not
   executed, the tenancy shall continue on a month to month basis
   effective the first of the month following the expiration
   date of the lease term. The anniversary month of this lease
   shall be 06.

   Rent.
   A.  $ 858.00 shall be payable by the PHA as a
               housing assistance payment on behalf of the
               tenant.
       $ 483.00 shall be payable by the Tenant directly
               to the landlord.
       $ 1,341.00 per month is the total rent amount the
               landlord can collect for the unit.
   B.  The amount of the total monthly rent payable to the
       Landlord during the term of the Lease (called the
       "contract rent") shall be determined in accordance with
       the Contract between the Landlord and the PHA.
   C.  The portion of the Contract rent payable by the Tenant
       ("tenant rent") shall be an amount determined by the
       PHA in accordance with HUD regulations and requirements.
       The amount of the tenant rent is subject to change as
       determined by the PHA during the term of the Lease. Any
       change in the amount of the tenant rent will be stated
       in a written notice by the PHA to the Tenant and the
       Landlord, stating the new amount and the effective date
       of the change. Initially and until such change the
       tenant agrees to pay 483.00 per month to the
       Landlord as the tenant rent. The rent is due and payable
       on the first day of the month; the initial rent payment
       shall be prorated if the Lease does not begin on the
       first day of the month.

D.   The tenant rent, as determined by the PHA is the maximum
     amount the Landlord can require the Tenant to pay as rent
     for the dwelling unit, including all services, maintenance
     and utilities to be provided by the Landlord in accordance
     with this Lease.

E.   Each month, the PHA will pay a housing assistance payment
     to the Landlord on behalf of the Tenant Family in
     accordance with the Contract.  The monthly housing
     assistance payment is the difference between the contract
     rent and the tenant rent.

4.   Utilities and Appliances:
     A.   The Landlord shall provide the utilities indicated on the
          Housing Assistance Payments Contract.

     B.   The Housing Assistance Payments Contract shall indicate
          whether the appliances are to be provided by the owner or
          tenant.  In addition, it shall indicate whether any other
          appliances shall be provided by the owner.

5.   Additional Terms and Conditions shall be specified under the
     "Utilities and Appliances" section of the Housing Assistance
     Payments Contract under the heading of "Other (specify)".

6.   Security Deposit:
     The Security Deposit requested by the owner is 1,300.00.
     A security deposit shall be paid by the tenant to the owner
     as specified in the Housing Assistance Payments Contract.  The
     owner cannot request a security deposit that is more than is
     legally permitted by State and local law.

THIS LEASE SUPERSEDES ANY OTHER TENANT/LANDLORD AGREEMENTS
PREVIOUSLY IN EFFECT.  We, the undersigned, have read this lease,
and by signing do hereby execute and agree to its terms as
supplemented by the Housing Assistance Payments Contract.

LANDLORD(S) LOUIE, JIM YAN                Tenant(s) WILLIAM C ARTEMUS

_____Jim J Louie_____   _____   x William C Artemus  06/12/07
SIGNATURE                    DATE         SIGNATURE                DATE

_____   _____   x_____
SIGNATURE                    DATE         SIGNATURE                DATE

OWNER
(TITLE (OWNER, LANDLORD, AGENT, MANAGER)

SAN FRANCISCO HOUSING AUTH.          HOUSING ASSISTANCE PAYMENTS CONTRACT
LEASED HOUSING DIVISION              (HAP CONTRACT)
440 ROBERT STREET                    SECTION 8 TENANT-BASED ASSISTANCE
SAN FRANCISCO, CA 94124              HOUSING CHOICE VOUCHER
(415) 715-3280/715-3287-FAX

Part A of the HAP Contract:  Contract Information

1.   Contents of Contract
     This HAP Contract has three parts;
          Part A:   Contract Information
          Part B:   Body of Contract
          Part C:   Tenancy Addendum

b.  Tenant:  WILLIAM C ARTEMUS

c.  Contract Unit
        210 TEDDY AV LWR
        SAN FRANCISCO, CA 94134

d.  Household:
    The following persons may reside in the unit.  Other persons
    may not be added to the household without prior written
    approval of the owner and the PHA:

    WILLIAM ARTEMUS C

e.  Initial Lease Term
    The initial lease term begins on 06/16/09.
    The initial lease term ends on 05/31/10.

f.  Initial Rent to Owner
    The initial rent to owner is 1,341.00.

g.  Initial Housing Assistance Payment (HAP)
    The initial HAP shall be 858.00.
    The HAP contract term commences on the first day of the
    initial lease term. At the beginning of the HAP contract term,
    the amount of the housing assistance payment by the PHA to the
    owner is 858.00 per month.

    The amount of the monthly housing assistance payment by the
    PHA to the owner is subject to change during the HAP contract
    term in accordance with HUD requirements.

h.  Initial Tenant Rent
    The initial tenant rent is 483.00.

    Proration:  Mo. __6____  Days __15___  Ten. Rent $242.00 HAP $429.00

Utilities and Appliances
The owner shall provide or pay for the utilities and
appliances indicated below by an 'O'. The tenant shall pay or
provide the utilities and appliances indicated below by a 'T'.
Unless otherwise specified below, the owner shall pay for all
utilities and appliances provided by the owner.

| Item | | LANDLORD | TENANT |
|---|---|---|---|
| Heating | Nat. Gas | _____ | _____ |
| | Bottle Gas | _____ | _____ |
| | Oil or Electric | _____ | _____ |
| | Coal or Other | _____ | _____ |
| Cooking | Nat. Gas | _____ | _____ |
| | Bottle Gas | _____ | _____ |
| | Oil or Electric | _____ | _____ |
| | Coal or Other | _____ | _____ |
| Other Electric | | _____ | _____ |
| Air Conditioning | | _____ | _____ |
| Water Heating | Nat. Gas | _____ | _____ |
| | Bottle Gas | _____ | _____ |
| | Oil or Electric | _____ | _____ |
| | Coal or other | _____ | _____ |
| Water | | _____ | _____ |
| Sewer | | _____ | _____ |
| Trash Collection | | _____ | _____ |
| Refrigerator | | _____ | _____ |
| Range | | _____ | _____ |
| Microwave | | _____ | _____ |
| Other (specify) | | _____ | _____ |

********* OWNER PAYS ALL UTILITIES *********

9   Security Deposit
The security deposit requested by the owner is 1,300.00.
The owner may not request a security deposit in excess of the
amount legally permitted by State and local law.

Signatures

Public Housing Agency:                    Owner:  LOUIE, JIM YAN

San Francisco
Housing Authority                         Print or Type Name of Owner

Paulette Boyd                             Signature
Supervisor of Inspections
                                          Jim Louie
                                          Print or Type Name of Signatory

6/16/09                                   6-15-09
Date                                      Date